## Affidavit in Support of a Criminal Complaint

### Introduction

I, Aaron Hayes, Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"), Youngstown, Ohio, having been duly sworn, state that:

### Agent Background

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in 18 U.S.C. § 2516.

2. I am currently a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed since October 2009. I am currently assigned to the Cleveland Division and work out of the Youngstown, Ohio, Resident Agency office. My experience is primarily white-collar crimes and financial investigations. In the course of my duties, I regularly serve subpoenas, conduct interviews, take sworn statements, and otherwise gather evidence in furtherance of criminal investigations, including assisting during the execution of search warrants. I also testify in front of grand juries and in court. Investigations that I have been apart of include, but are not limited to: wire and mail fraud, mortgage fraud; securities fraud; bank fraud; bankruptcy fraud; theft; terrorism; and locating and arresting fugitives.

3. Over the course of my career, I received advanced training, including, but not limited to: case organization; financial forensic investigative techniques; firearms-related matters; mortgage-fraud investigations; fraudulent documents; close quarters combat; and

driving instruction. The training listed above is in addition to regular and recurring legal, firearms, defensive tactics, and use of force training.

4. This Affidavit is submitted in furtherance of an ongoing criminal investigation. It is based upon my own personal knowledge, my review of law enforcement reports, and my discussions with other law enforcement agents and officers. The information contained in this Affidavit does not describe the entirety of this investigation, but sets forth only those facts necessary to establish the requisite probable cause for the issuance of an arrest warrant for **HAKI TOPLICA ("TOPLICA"), aka HARRY COHEN**.

5. I make this Affidavit in support of an application for the issuance of an arrest warrant for the following individual:

### Individual to be Arrested

**HAKI TOPLICA**

| | |
|---|---|
| Alisaes: | **Harry Cohen** |
| Address: | 18 Father Capodanno Blvd. – Apt. 3G, Staten Island, NY |
| | * Currently in the Mahoning County Jail – Youngstown, Ohio |
| Race: | White |
| Sex: | Male |
| Date of Birth: | XX/XX/1994 |
| Social Security Number: | XXX-XX-9379 |
| Height: | 5' 6" |
| Weight: | 170 lbs. |
| Age: | 24 years old |

### Definitions

6. Title 18, United State Code, Section 1343 makes it an offense for a person to devise a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises, or to willfully participated in such a scheme with

knowledge of its fraudulent nature, while acting with the intent to defraud, when that scheme transmitted any writing, signal, or sound that advanced, furthered, or carried out that scheme by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind that advanced, furthered, or carried out that scheme by means of a wire, radio, or television communication in interstate commerce.

### Probable Cause

7. In or around the end of June 2018, Daniel Schaefer, who was at the time about 69-years old, was attempting to secure a monetary loan. He came in contact with "**Harry Cohen**" (later determined to be **HAKI TOPLICA**) while attempting to negotiate a loan with World Business Lenders. At the time, Schaefer was looking to secure a bridge loan to help him as he downsized his company. Schaefer advised "**Harry Cohen**" that he (Schaefer) was interested in securing a loan for $475,000. "**Harry Cohen**" told Schaefer that to provide that loan, Schaefer would need to first pay certain "fees" and up-front costs. Based on this representation, Schaefer paid approximately $7,000. "**Harry Cohen**" later told Schaefer that the loan had fallen through, and Schaefer could not recoup the money he had sent. Schaefer has never recouped the moneys paid for this particular loan.

8. In or around July 2018, "**Harry Cohen**" contacted Schaefer and told Schaefer that he ("**Harry Cohen**") had secured Schaefer a loan for approximately three-million-dollars. "**Harry Cohen**" told Schaefer to finalize this loan, Schaefer would have to pay "**Harry Cohen**" over $100,000. Based on this representation, Schaefer paid "**Harry Cohen**" several cash payments and wires totaling approximately $100,000. "**Harry Cohen**" later told Schaefer that

this loan had fallen through and that "**Harry Cohen**" had to "walk away" from it. "**Harry Cohen**" did not repay Schaefer the $100,000.

9. In or around August 2018, "**Harry Cohen**" again contacted Schaefer and told Schaefer that he ("**Harry Cohen**") had now secured Schaefer a ten-million-dollar loan. "**Harry Cohen**" told Schaefer to finalize this loan, Schaefer would have to provide "**Harry Cohen**" with collateral. "**Harry Cohen**" then visited Schaefer, and the two reviewed Schaefer's finances, including real property and about 60 motor vehicles. Upon this review, "**Harry Cohen**" told Schafer that the reviewed property was worth about 1.2 million dollars. To provide the required collateral, "**Harry Cohen**" then had Schaefer sign the titles for many of his (Schaefer's) motor vehicles, including a 2009 Ford Mustang, over to **HAKI TOPLICA**. When signing the titles, "**Harry Cohen**" signed as **HAKI TOPLICA**, telling Schaefer that **TOPLICA** was an investor. "**Harry Cohen**" then had each of these signed titles notarized. When "**Harry Cohen**" left, he drove away in the signed-away 2009 Ford Mustang.

10. In or around August 2018, "**Harry Cohen**" told Schaefer that he ("**Harry Cohen**") needed approximately $20,000 wired to a TD Bank account ending in 3486 for "fees" associated with the ten-million-dollar loan referenced in the prior paragraph. Based on this representation, Schaefer caused one of his vendors to wire money it had owed to Schaefer directly to the **Cohen**-mandated TD Bank account ending in 3486 to cover the "fees" for the ten-million-dollar loan. The $20,000 was then wired from the vendor's account at PNC Bank in Pittsburgh, Pennsylvania to the TD Bank account ending in 3486 on August 17, 2018. The beneficiary of the wire was Luisa Rivera Goris, and the account has an address in New York, New York.

4

11.     On or about September 5, 2018, at the direction of "**Harry Cohen**," Schaefer wired $5,000 to a TD Bank account ending in 3486 as additional collateral/"fees" to obtain the aforementioned ten-million-dollar loan. This money was wired from the Schaefer's business account at Farmers National Bank in Canfield, Ohio to the TD Bank account ending in 3486. The beneficiary of the wire was Luisa Rivera Goris, and the account has an address in New York, New York.

12.     On or about September 7, 2008, "**Harry Cohen**" told Schaefer that he ("**Harry Cohen**") was en route to Schaefer's Ohio residence to deliver the ten-million dollars (as a result of securing the aforementioned ten-million-dollar loan). "**Harry Cohen**" claimed he was 3.5 hours away. "**Harry Cohen**" never showed up that day.

13.     The next day, "**Harry Cohen**" called Schaefer and told Schaefer that he ("**Harry Cohen**") had been pulled over by police officers while in Pennsylvania, and a dirty cop had turned his camera off, stolen the ten-million dollars, and then threatened "**Harry Cohen**."

14.     After this happened, "**Harry Cohen**" again contacted Schaefer and told him that "**Harry Cohen**" could provide Schaefer with another ten-million-dollar loan if Schaefer could provide collateral valued at one-million dollars. Schaefer declined, thinking he would not be able to pay off two ten-million-dollar loans.

15.     On or about September 12, 2018, Schaefer contacted law enforcement about these unfulfilled loans.

16.     From on or about September 21, 2018 until on or about September 26, 2018, Schaefer made several consensually monitored and recorded phone calls to "**Harry Cohen**." Schaefer knows this phone number as "**Harry Cohen's**" phone number as it has been the

number he had been using to communicate with **"Harry Cohen"** over the several preceding months.

17. The first consensually monitored and recorded phone call occurred on or about September 21, 2018. Law enforcement watched as Schaefer dialed, and it was the same phone number that Schaefer had identified as the number by which he had previously contacted **"Harry Cohen."** This phone conversation was recorded and is presently preserved in the Springfield Township Police Department ("STPD") evidence vault. Law enforcement was in the same room as Schaefer when the conversation took place. During that call, Schaefer and **"Harry Cohen"** discussed a previously contemplated twenty-million-dollar loan to Schaefer from **"Harry Cohen." "Cohen"** said he only needed $300,000 to make this loan happen. **"Cohen"** also told Schaefer that, based on previous discussions, **"Cohen"** had told the "lender" that Schaefer needed his equipment titles back, so he (Schaefer) could sell the equipment to pay the needed $300,000. **"Harry Cohen"** said he would get those titles back to Schaefer, which would allow Schaefer to come up with the $300,000. **"Cohen"** also said that he would return the remaining titles to Schaefer, as well as the twenty-million dollars in funding, when Schaefer delivered the $300,000 to him ("Cohen"). The phone number Schaefer spoke to was 929-397-1197, and Schaefer identified the voice on the other end of the line as **"Harry Cohen."** During the call, the person on the other end of the line identified himself as **"Harry."**

18. That same day, Schaefer identified to law enforcement a picture of **HAKI TOPLICA** as the person he knew as **"Harry Cohen." HAKI TOPLICA** was associated with Staten Island, New York.

19. On or about September 24, 2018, an arrest warrant for **HAKI TOPLICA** was issued through the Struthers, Ohio, Municipal Court for felony Theft charges.

20. On or about September 25, 2018, Schaefer made the second consensually monitored and recorded phone call to "**Harry Cohen**." Law enforcement watched as Schaefer dialed, and it was the same phone number that Schaefer had identified as the number by which he had previously contacted "**Harry Cohen**." This phone conversation was recorded and is presently preserved in the STPD evidence vault. Law enforcement was in the same room as Schaefer when the conversation took place. During that call, "**Harry**" told Schaefer that he (Schaefer) had two options. Schaefer could pay "**Cohen**" to get all his titles back, or Schaefer could pay "**Cohen**" to get the twenty-million-dollar loan. "**Harry**" said he could bring certain titles to Schaefer if Schaefer was looking to sell the corresponding equipment in order to gather the cash necessary for the down payment to secure the twenty-million-dollar loan. "**Cohen**" said he would not let go of all of the titles until Schaefer made the full payment of $300,000 to get the loan. "**Cohen**" told Schaefer that the payments needed to be in cash. The phone number Schaefer spoke to was 929-397-1197, and Schaefer identified the voice on the other end of the line as "**Harry Cohen**."

21. Later that same day, "Cohen" called Schaefer back. This call was also consensually monitored and recorded. When the phone rang, Schaefer's caller ID identified the caller as "Harry wife Luisa Cohen," which was the name Schaefer had associated with that particular phone number. The calling phone number was the same phone number that Schaefer had identified as the number by which he had previously contacted "**Harry Cohen**." This phone conversation was recorded and is presently preserved in the STPD evidence vault. Law

7

enforcement was in the same room as Schaefer when the conversation took place. During that call, **"Harry Cohen"** told him that he (**"Cohen"**) was getting paperwork together that would state all of the loan details and exactly what the financial details of the deal would be. The phone number Schaefer spoke to was 929-397-1197, and Schaefer identified the voice on the other end of the line as **"Harry Cohen."**

22. That same day, Schaefer made another consensually monitored and recorded phone call to **"Harry Cohen."** Law enforcement watched as Schaefer dialed, and it was the same phone number that Schaefer had identified as the number by which he had previously contacted **"Harry Cohen."** This phone conversation was recorded and is presently preserved in the STPD evidence vault. Law enforcement was in the same room as Schaefer when the conversation took place. During that call, **"Harry"** said he was getting everything together. He told Schaefer that the lender was going fund this loan, and that the titles and the twenty-million dollars would be delivered by the lender, who would be driving the Mustang. **"Harry"** said he was just the middleman, and Schaefer would be getting the money, titles, and Mustang from the lender. **"Harry"** said he was only there to help Schaefer out and this is the only reason why he was still involved. Schaefer told **"Harry"** what titles he needed in order to sell to raise cash for the $300,000 payment. **"Harry"** said he was getting ready to come to Ohio that night and would be there in the morning or tomorrow afternoon. **"Harry"** said that they (**"Harry"** and Schaefer) needed to clear $300,000 for the lender. **"Harry"** then asked Schaefer how much money he (Schaefer) would have for him (**"Cohen"**) tomorrow. **"Harry"** would bring the paperwork, and when the $300,000 cleared, the lender would come in the Mustang with the twenty-million dollars and the rest of the titles. **"Harry"** said, "This is going to be a journey, my friend, and you

and I are going to finish this." "**Harry**" said the money had to be in cash. The phone number Schaefer spoke to was 929-397-1197, and Schaefer identified the voice on the other end of the line as "**Harry Cohen**."

23. Later that same date, "**Harry Cohen**" sent Schaefer a text message that included a photograph of a document entitled "Funding Agreement" and dated September 25, 2018. The layout of the photographed document appeared to have originated from: "Wolf Funding" located at "123 wall street, New York City, Broad Street." The document read as follows:

"This agreement stating that Daniel Shaffer is being lend 20 million dollars. Inorder for us (the lender) to release the funds Mr. Shaffer has to pay the release fee witch is $300,000

Daniel Shaffer will be making these payments in increments of $40,000-60,000 at a time, in order for us (the lender) to release the funding amount daniel must complete the release fee payment. Shaffer will also be receiving the titles that he sold us sold back to him. The release fee must be paid until then we cannot return the titles. Also the release fee will be collected by the collector. Shaffer stated that he needed a specific amount of titles or a specific piece of equipment that he can sell in order for the release amount to be paid off.

We will be moving forward with the funding amount at the terms of 20 years and the payback as the funding amount. The funding amount will be delivered by the lender to shaffer home or work place. All parties are included and notified,"

24. On or about September 26, 2018, Schaefer, using an application on his phone, recorded a phone conversation he had with the person he identified as "**Harry Cohen**." During that call, "**Harry**" asked Schaefer to meet him at the hotel with the money. Schaefer said he would not go to the hotel, and "**Harry**" responded that he would not go to Schaefer's house because he did not want the lender to know where Schaefer's house was. Schaefer voluntarily provided the recording of this call to law enforcement and the recording is maintained in the STPD evidence vault.

25. On or about September 26, 2018, law enforcement arrested **HAKI TOPLICA**, aka "**Harry Cohen**," pursuant to the arrest warrant issued on or about September 24, 2018 through the Struthers Municipal Court for felony Theft charges. He is presently incarcerated in the Mahoning County Justice Center based on those charges.

## Conclusion

26. Based upon the facts and circumstances set forth in this Affidavit, and my training and experience, there is probable cause to believe that **HAKI TOPLICA** has committed an offense involving a violation of Title 18, U.S.C. § 1343, that is, Wire Fraud.

_____
SA Aaron Hayes
Federal Bureau of Investigation

Sworn to and subscribed before me this 20th day of December 2018.

_____
HONORABLE GEORGE J. LIMBERT
U.S. MAGISTRATE JUDGE